# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TOGETHER CREDIT UNION, f/k/a ANHEISER-BUSCH EMPLOYEES' CREDIT UNION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   No. 4: 20 CV 23 DDN |
| STARNET INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the Court on the motion of defendant StarNet Insurance Company to dismiss the complaint of plaintiff Together Credit Union for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6). The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff commenced this action in the Circuit Court of the City of St. Louis. Defendant removed the action to this Court, alleging diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332. Defendant alleges plaintiff is organized under the laws of Missouri with its principal place of business in Missouri; defendant is incorporated in Iowa with its principal place of business in Connecticut; and the amount in controversy well exceeds $75,000.00. This Court has subject matter jurisdiction over the action, pursuant to 28 U.S.C. § 1332.

### *Plaintiff's allegations*

Plaintiff alleges the following in its state court petition. When plaintiff was known as Anheuser-Busch Employees' Credit Union ("AECU"), defendant issued to plaintiff a "claims made" Management Liability Insurance Policy, MLP 6003706-12 ("MLI policy"), covering the period April 1, 2017 to April 1, 2020. (Doc. 1-1 at 16.) A copy of the policy is attached as an exhibit to the petition.[1] Plaintiff seeks a judgment that defendant is required by the policy to provide a defense and indemnification for a judicial action pending in the United States District

---

[1] The Court may consider the exhibit for all purposes. Fed. R. Civ. P. 10(c).

Court for the Southern District of Illinois.  The parties in the case at bar do not dispute the relevant policy language.

    The coverage section of the MLI policy provides in relevant part:

> **C.**    <u>**Company Professional and Depository Services Liability**</u>
>
> The Insurer shall pay on behalf of the **company** and the **employees, loss** which the **company** or the **employees** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **professional and depository services act** taking place after the **retroactive date**, if any.

(Doc. 1-1 at 19.)   The Credit Union Amendatory Endorsement, effective April 1, 2017, contains language that is similar but removes the references to "employees."  (*Id.* at 50-51.)

    The policy defines "insured" thus:

> **Q.**    **Insured** means **directors, officers, employees,** the **company**, and, only with respect to the Fiduciary Liability Insuring Agreement, the **plans,** to the extent such person or entity is covered under an insuring agreement.

(*Id.* at 28.)

    "Professional and depository services" is defined in the policy thus:

> **GG.**    **Professional and depository services** means those services provided for or on behalf of customers of the **company**, other than:
>     a.    lending services
>     b.    services performed by any entity as to which the **company** shall have acquired ownership or control as security for a loan, lease, or other extension of credit;
>     c.    medical or health care services;
>     d.    architectural or construction management services;
>     e.    the rental of a safe deposit box;
>     f.    legal, actuarial or accounting services other than those performed for the **company**; or
>     g.    the designing, building, or maintenance of any website or the content of any website for an entity other than the **company.**

(*Id.* at 30.)  "Professional and depository services act" is defined in the policy as:

> **HH.**    **Professional and depository services act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **insured** in the rendering or failure to render **professional and depository services** other than a **securities act, lending act, fiduciary act, IRA/Keogh/Health Savings Account act,**

> **employment practices act, third party harassment act, electronic banking act, electronic publishing act, security breach,** or **trust act**

(*Id..*)  The policy treats the duty to defend thus:

> **Duty of the Insureds to Defend**
>
> It shall be the duty of the **Insureds** to select defense counsel, which shall be subject to the approval of the Insurer, and to defend any **claim** covered under this policy.
>
> With respect to any **claim** submitted for coverage, the Insurer shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **insureds** regarding:  (a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations.
>
> Subject to the Allocation section, the Insurer shall advance, on behalf of the **insureds**, **defense expenses** which the **insureds** have incurred in connection with **claims** made against them, before disposition of such claims, provided that to the extent that it is finally established that any such **defense** expenses are not covered under this policy, the **insureds**, severally according to their respective interests, agree to repay the Insurer such **defense expenses.**

(*Id.* at 37.)

Plaintiff further alleges that in August 2019 a class action lawsuit was brought against AECU in the United States District Court for the Southern District of Illinois, *Leon Chambers v. Anheuser-Busch Employees' Credit Union d/b/a American Eagle Credit Union,* No. 3:19 cv 842 ("*Chambers* case").

In the *Chambers* case complaint,[2] filed on August 2, 2019, plaintiff Chambers alleges he is a member of AECU and used its member retail banking services.  He alleges the general nature of the action thus:

## NATURE OF THE ACTION

1.  Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant Anheuser-Busch Employees' Credit Union d/b/a American Eagle Credit Union ("AECU") arising from its routine ***assessment and collection of multiple $29 Nonsufficient Funds Fees ("NFS")*** on a single item, which is deceptive and violative of its account agreement attached hereto as Exhibit A (the "Account

---

[2] A copy of the complaint is attached to plaintiff's Missouri state court petition in this case.

3

        Agreement"), *its fee schedule* attached hereto as Exhibit B (*the "Fee Schedule"*), and its overdraft policy attached hereto as Exhibit C (the "Overdraft Policy" together with the Agreement and the Fee Schedule, the "Agreement").

2.    AECU misleadingly and deceptively misrepresents its practices with respect to the assessment and collection of *NSF Fees*, including in the Agreement. AECU also omits material facts pertaining to this practice, including in the Agreement.

3.    This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief for breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment.

4.    Defendant's improper scheme *to extract funds* from account holders has victimized Plaintiff and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

(Doc. 1-1 at 69) (emphasis added). Plaintiff Chambers' complaint asserts claims of breach of contract (*id.* at ¶¶ 61-68), breach of the covenant of good faith and fair dealing (*id.* at ¶¶ 69-77), and unjust enrichment (*id.* at ¶¶ 78-83). The complaint seeks actual, statutory, and punitive damages, restitution, attorney's fees, and injunctive relief. (*Id.* at 84.)

Plaintiff Together Credit Union further alleges in the case at bar that, upon being served in the *Chambers* case, AECU promptly gave notice of the lawsuit to defendant StarNet Insurance Company under the MLI policy. In a letter dated October 24, 2019, defendant informed AECU that the MLI policy afforded no coverage and rejected AECU's demand for a defense. Because defendant denied coverage and refused to defend it, plaintiff at its expense hired its own counsel to defend itself in the *Chambers* case.

In this E. D. Mo. case, plaintiff insured alleges the following claims against defendant insurer:

(1)    Breach of Contract for defendant's refusal to provide a defense in accordance with the terms of its MLI policy (Count 1);

(2)    Relief under Mo. Rev. Stat. §§ 375.296 and 375.420, for defendant's vexatious refusal to defend and indemnify in accordance with the MLI policy without reasonable cause (Count 2); and

(3)    Declaratory judgment stating that defendant is contractually obligated to provide plaintiff a defense in the *Chambers* case (Count 3).

4

*Insurer's motion to dismiss*

In its motion to dismiss for failure to state a claim, defendant argues its MLI policy does not afford plaintiff a defense or indemnification for the *Chambers* case. (Doc. 15.) This is, it argues, because the policy specifically excludes coverage for the insufficient funds fee claims made against plaintiff in that judicial action. Defendant insurer relies on the following policy language:

> **Exclusions Applicable to Insuring Agreement C.**
>
> The Insurer shall not be liable for **loss** in connection with any **claim:**
> * * *
> c.        based upon, arising out of, or attributable to any dispute involving fees or charges for an insured's services

(Doc. 1-1 at 20, 52.)

Plaintiff argues that Missouri law affords it the benefit of facts relevant to coverage other than just the policy language, such as facts argued in the *Chambers* case. These facts involve the scope of the claim in that case. (Doc. 19 at 1.)


*Applicable Standards*

Regarding the instant motion to dismiss, the parties do not dispute the material historical facts alleged in plaintiff Together Credit Union's state court petition, which is now in this Court. Accepting the material factual allegations as true, whether for the purposes of Federal Rule of Civil Procedure 12(b)(6) or Rule 12(c) (regarding judgment on the pleadings), the Court must decide whether defendant is entitled to judgment as a matter of law. *E.g., Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.,* 715 F.3d 695, 697 (8th Cir. 2013). In this diversity case, the parties agree, and the Court concurs, that the law of Missouri provides the substantive rules of decision. 28 U.S.C. § 1652; *Spirtas Co. v. Nautilus Ins. Co.* 715 F.3d 667, 671 (8th Cir. 2013).

Under Missouri law,

> "As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010), *citing H.K. Porter Co. v. Trans. Cas. Co.*, 215 S.W.3d 134, 140-41 (Mo. App. 2006). Missouri courts interpret terms in an insurance contract according to their plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Id.* Ambiguities are resolved in favor of the insured. *Burns v. Smith*,

5

> 303 S.W.3d 505, 509-10 (Mo. banc 2010).  "Missouri . . . strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Id.* "Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import." *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968); *see also Bituminous Cas. Corp. v. Walsh & Wells, Inc.*, 170 S.W.2d 117, 121 (Mo. App. 1943).

*Spirtas Co.*, 715 F.3d at 671.  "Missouri courts are guided by the general principle that 'insurance contracts are designed to furnish protection; as a result, where possible, [courts] interpret them to grant coverage rather than defeat it.'" *Minden v. Attain Specialty Ins. Co.*, 2013 WL 5106519, at *6 (E.D. Mo. 2013).  Here, neither party argues that any of the policy's language is ambiguous.

When determining whether an insurer is obligated by its policy to defend its insured against a claim made in an underlying court case, Missouri courts consider that the duty to defend is broader than the duty to indemnify, they consider the allegations in the underlying case (here, the *Chambers* case), and they consider facts that the insurer actually knew or were reasonably apparent to the insurer about the dispute when the case was filed.  *Doe Run Resources Corp. v. Am. Guar. & Lia. Ins.*, 531 S.W.3d 508, 513 (Mo. banc 2017); *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 398 (Mo. Ct. App. 2007).   Here, both parties refer the Court only to the language of the *Chambers* case complaint.   Ultimately, defendant insurer must demonstrate that there is no possibility that any claim made in the *Chambers* case is covered by the MLI policy. *Stark Liquidation Co.*, 243 S.W.3d at 398.

The parties direct this Court to no Missouri court opinion specifically involving the policy exclusion at issue in the MLI policy.

### *First Community Bancshares v. St. Paul Mercury Ins. Co.*

Plaintiff insured directs the Court's attention to *First Community Bancshares v. St. Paul Mercury Insurance Co.*, 593 Fed. Appx. 286 (5th Cir. 2014) (applying Texas law), which involves a similar context.  In *First Community*, a bank sued its insurer for its failure to defend the bank in two class-action lawsuits under its insuring agreement.  The two class-action cases involved claimants who were assessed overdraft fees by the bank.  The district court ruled the insurer had a duty to defend the bank regarding the two class-action suits but also found that the insurer did not violate the duty of good faith and fair dealing to the plaintiff bank.  The Fifth Circuit Court of Appeals, in affirming the district court, stated its guiding principles, applying Texas law, thus:

6

"'[w]hile the duty to defend is triggered by a single alleged injury that falls within the scope of the coverage provision, exclusions negate the insure[r]'s duty to defend only when all of the alleged injuries that fall into the coverage provision are subsumed under the exclusionary provision.'" *First Community Bancshares*, 593 Fed. Appx. at 289 (quoting *City of College Station, Tex. v. Star Ins. Co.*, 735 F3d 332, 337 (5th Cir. 2013) (ultimately relying on *St. Paul Ins. Co. v. Tex. Dept. of Transp.,* 999 S.W.2d 881, 887 (Tx. Ct. App. 1999)).  In the Fifth Circuit opinion, the court affirmed the district court's determination that the insurer had the duty to defend the bank, because "at least some of the allegations potentially fall outside of the exclusion and within coverage." *Id.* at 289. The circuit court agreed with the district court that the underlying case allegations included the insured bank "providing misleading information on its account practices and customers' account balances—*that do not have a causal connection to a disagreement that necessarily includes fees.*"   *Id.* (emphasis added).  The allegations that triggered the duty to defend included the allegations about the bank's reordering of debits from highest to lowest and preventing customers from ascertaining the accurate balances in their accounts.  The appellate court discerned:

> While overdraft fees may have sometimes accompanied these alleged facts, this is not necessarily always the case.  Instead, the primary harm stemming from these allegations is that customers could not ascertain their account balances and could not accurately plan spending, withdrawals, and deposits.
>
> Nor do these factual allegations necessarily bear a causal relationship to fees: charging of fees was not the practice that caused the harm, even if First Community's actions were motivated by a desire to obtain more fees.

*Id.*

### *Bancorpsouth, Inc. v. Fed. Ins. Co.*

Defendant insurer StarNet invokes the holding in *Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582 (7th Cir. 2017), a case that also considered a similar policy exclusion for "any fees or charges" in the face of class action claims based upon the bank's "assessment and collection of excessive overdraft fees."  873 F.3d at 584.  The District Court granted insurer's motion to dismiss and the Seventh Circuit affirmed.  In its application of Mississippi law, the Court of Appeals compared the language of the insurance policy with the allegations of the underlying claim.   In this analysis, the Seventh Circuit stated:

> To support its argument that the injuries asserted in the Swift Complaint were primarily caused by Bancorp's general policies and practices, Bancorp points to a

7

variety of paragraphs in the Swift Complaint that, on their face, have no mention of overdraft fees. For example, paragraph 35 alleges:

> Bancorp South misleads its customers regarding its reordering practices, as the Bank does not state unequivocally in its contract that it will reorder debits from highest to lowest. Thus, the Deposit Agreement is deceptive and/or unfair because it is, in fact, the Bank's practice to always reorder debits from highest to lowest.

However, these individual allegations cannot be read in a vacuum, and instead, must be read in the context of the entire complaint. . ..

Read in its entirety, the only harm alleged by the Swift Complaint is Bancorp's maximization of excessive overdraft fees on its customers. . .. Moreover, the complaint defines the class of plaintiffs as customers who "incurred an overdraft fee."

*Id.* at 586.

The analyses engaged in by *Bancorpsouth* and to some extent by *First Community Bancshares* are like that expressed by the Missouri Supreme Court in *Doe Run Resources Corp. v. Am. Guar. & Lia. Ins.*, 531 S.W.3d 508 (Mo. banc 2017), although applying a different policy exclusion. The gist of the *Doe Run* opinion is described succinctly by the Supreme Court in the first paragraph of its reported opinion:

> The Doe Run Resources Corporation was sued by several minor plaintiffs allegedly injured by toxic pollution released from Doe Run's smelting facility in La Oroya, Peru. Doe Run sued its insurer, St. Paul Fire and Marine Insurance Company, for reimbursement of defense costs incurred during the litigation of these claims. St. Paul denied any duty to defend Doe Run, alleging coverage was barred under the insurance policy's pollution exclusion. The circuit court entered summary judgment in favor of Doe Run, finding the pollution exclusion ambiguous and unenforceable. St. Paul appeals. Because the pollution exclusion is not ambiguous, coverage is barred and St. Paul owes no duty to defend Doe Run.

531 S.W.3d at 509. After determining that the policy exclusion language was not ambiguous, the court turned to whether the policy excluded coverage for all the claims asserted in the underlying lawsuits. In doing so, it compared the language of the exclusion with the alleged claims. *Id.* at 513. Doe Run argued that the claims in the lawsuits involved "allegations of Doe Run's ownership of the La Oroya facility or the duty it owed to the plaintiffs" as well as the allegations of the "negligent release of toxic substances into the environment---the *actual* alleged cause of each plaintiff's injury or damage." *Id.* at 514-15. The court determined that all of the plaintiffs' claims

8

involved the release of toxic pollutants, the subject matter of the policy exclusion, and none of the claims involved the general operation of the Doe Run company, the court found the insurer had no duty to defend the company in the lawsuits. *Id.* at 515.

As stated, it is the duty of this Court to apply Missouri substantive law in the case at bar. No Missouri case has been cited as applying the policy exclusion for "dispute[(s)] involving fees or charges for an insured's services."  In that regard, the Court must decide how the Missouri Supreme Court would apply the same exclusion in this case. *Doe HL v.* James, 2006 WL 6677124 at *2 (E. D. Mo. 2006).  In its consideration of the Missouri Supreme Court's opinion in *Doe Run Resources Corp. v. Am. Guar. & Lia. Ins.*, the Court believes the Missouri Supreme Court would rule as did the court in *Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582 (7th Cir. 2017).  Both the *Bancorpsouth* and the *Doe Run Resources Corp.* courts determined the respective policy exclusions were unambiguous and applicable to the claims asserted in the cases, carefully considering whether the underlying claims included more than what the policies excluded and determining no underlying claim was being asserted against the insured other than those excluded. While the Fifth Circuit in *First Community Bancshares v. St. Paul Mercury Insurance Co.*, applied the same exclusion, it found that indeed the underlying claims included ones not excluded by the applicable policy.

## *Discussion*

Defendant argues that the only claims in the *Chambers* case are those covered by the exclusion.  Plaintiff argues that the claims in the *Chambers* case are not limited to the application of NSF fees exclusion.  The Court agrees with defendant.

Plaintiff argues specifically that the *Chambers* case involves two claims that are not covered by the exclusion and that trigger defendant's duty to defend:

> [(1)] claims [that] are directed toward [plaintiff's] policy of allowing [automated clearing house ("ACH")] withdrawals on Chambers' account even when his account had a negative balance.  In essence, Chambers claims on his own behalf as well as the putative class, that prior authorization to allow ACH withdrawals should have been suspended when the account is underfunded [or] overdrawn.

and

> [(2)] claims for breach of good faith and fair dealing in the agreement between Chambers and TCU.  Since the Chambers' suit admits the $29 fee per transaction was appropriate, it stands to reason that the remaining basis for his claim of breach of good faith and fair dealing relate to TCU's policies pertaining to allowance of

9

> ACH transactions. Count II . . . makes no reference to improper fees charged and does not seek damages based on the NSF fees. . .. Count II is focused on TCU's stated policy of allowing ACH transactions from authorized parties without monitoring the transactions.

(Doc. 19 at 2.)

Plaintiff argues that the primary source of harm alleged in *Chambers* stems from plaintiff's general policies and procedures, not its fees. (Doc. 19 at 10.) It points to a variety of paragraphs in the *Chambers* complaint that either have no mention of overdraft fees on their face, or the "fee" portion is omitted. (Doc. 19 at 4-7.) However, individual allegations cannot be read in a vacuum; instead, they must be read in the context of the entire complaint. *Bancorpsouth, Inc.*, 873 F.3d at 586. In the instant case, almost every sentence of the *Chambers* complaint expressly uses the word "fees," all subheadings reference fees, and passages that do not expressly mention fees do so implicitly. (Doc. 1-1 Ex. B.)

Plaintiff argues the *Chambers* Count II claim for breach of the covenant of good faith and fair dealing is not tied to excessive fees. The Court disagrees. For example, Count II of the *Chambers* claim states: AECU abuses its discretion "by charging multiple NSF Fees" and accordingly the members of the Class sustained damage. The complaint language implies a financial loss resulting from the expressly mentioned fees. (Doc. 1-1 at 15-16.)

In *Bancorpsouth*, the Seventh Circuit noted that the first paragraph on the complaint specifically stated the "the crux of the lawsuit centers on Bancorp's 'unfair and unconscionable assessment and collection of excessive overdraft fees,'" the complaint defined the class of customers as those who incurred overdraft fees, and the language of the complaint focused on overdraft policies and procedures, always connected to a wrongful collection or imposition of overdraft fees. 873 F.3d at 587. Likewise, here, under the heading "Nature of the Action," *Chambers* alleges the case arises from AECU's routine assessment and collection of multiple $29 NSF Fees. Additionally, the Class is defined as customers who were charged multiple NSF Fees. (Doc. 1-1 at 2, 11.)

Further, the Seventh Circuit distinguished *First Community,* the Fifth Circuit opinion cited by plaintiff in the instant case. *Id*. In *First Community*, involving a similar complaint alleging unfair excessive overdraft fees and exclusion of claims "based upon, arising out of or attributable to any dispute involving fees or charges. . . ," the Fifth Circuit found the primary harm was not the

collection of fees, but rather "that customers could not ascertain their account balances and could not accurately plan spending, withdrawals, and deposits." *First Community Bancshares*, 593 Fed. Appx. at 290.  Unlike the instant case, in *First Community* specific allegations lacked a causal connection to fees.  For example, First Community delayed postings of transactions to prevent customers from ascertaining accurate balances in their accounts, failed to provide balance information to customers, and in some cases informed customers they had positive balances when in reality the balances were negative.  *Id*.  Although overdrafts sometimes accompanied the alleged facts, such was not always necessarily the case.  *Id*.  These facts are distinguishable from the instant case, in that, here, fees are at the root of every allegation.  For example, plaintiff Chambers alleges that AECU abuses its discretion by taking money out of customers' accounts in the form of multiple fees for the same transaction, AECU abuses power by charging multiple NSF fees, AECU unjustly retained benefits from NSF fees, and AECU breached the agreement when it charged NSF fees. (Doc. 1-1. at 7, 10, 15-16.)  In the *Chambers* complaint there are no allegations independent of fees, NSF Fees, and fee schedules.

       The court in *Bancorpsouth* concluded there was no policy or practice alleged that existed independent of the overdraft fee scheme. *Bancorpsouth,* 873 F.3d at 589.  Therefore, the complaint in that underlying lawsuit was excluded from coverage and the dismissal of the case was affirmed. The bad faith denial of coverage claim was also dismissed since there were no longer underlying claims. *Id*.  This Court finds the claims made against plaintiff in the *Chambers* Illinois federal case are excluded from coverage under the MLI policy fee exclusion.  Because the underlying substantive claims are not covered by the MLI policy, it is not necessary to analyze further the allegations of plaintiff's vexatious refusal to defend or declaratory judgment claims.

## CONCLUSION

       For the reasons set forth above,

       **IT IS HEREBY ORDERED** that the motion of defendant StarNet Insurance Company to dismiss (Doc. 15) is **sustained.**  This action is dismissed with prejudice.  An appropriate Judgment Order is issued herewith.

      /s/   David D. Noce     
      **UNITED STATES MAGISTRATE JUDGE**

Signed on September 18, 2020.